* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into as:
 STIPULATIONS
1. The parties hereto are subject to and bound by the North Carolina Workers' Compensation Act.
2. An employer/employee relationship existed as of November 5, 2003.
3. States Fire Insurance Company was the carrier on the risk.
4. Plaintiff was injured by an accident arising out of and in the course of his employment on November 5, 2003, when he slipped in some grease in front of his machine and fell backward.
5. The parties stipulated to and submitted medical records.
 * * * * * * * * * * *
Based upon all the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-four years of age. He grew up in Mexico and obtained a bachelor's degree in law there. Prior to his employment with defendant-employer, plaintiff worked in a variety of jobs, including courier, chauffeur, office worker, and machine operator.
2. Plaintiff began working for defendant-employer in the fall of 2002 as a machine operator.
3. Based on a Form 22 supplied by defendants, plaintiff had an average weekly wage of $552.91 and a compensation rate of $368.32.
4. On November 5, 2003, plaintiff slipped and fell near his machine, sustaining a trunk contusion. According to his testimony at the hearing before the Deputy Commissioner, Raul Lio, the safety coordinator for Real Reel Corp., offered plaintiff medical treatment beyond basic first aid, which plaintiff refused. Mr. Lio told plaintiff that medical treatment was available in the future, if needed. Plaintiff signed an incident report stating that he had refused medical treatment.
5. On November 10, 2003, plaintiff reported that his hip and tailbone were still tender and requested to be taken to the doctor, which defendant-employer did. Plaintiff presented to Dr. Mobley at ProMed on November 10, 2003 and Dr. Mobley diagnosed plaintiff with a mild trunk contusion. According to plaintiff, Dr. Mobley stated that plaintiff was fine. Dr. Mobley did not prescribe any medication and plaintiff returned to work that same evening.
6. Mr. Lio testified that he periodically asked plaintiff about his condition over the next six weeks after the accident and plaintiff told him he was sore but was generally doing fine.
7. After November 5, 2003, plaintiff only missed one day of work during the remainder of 2003. From January 1, 2004 until plaintiff resigned on July 1, 2004, plaintiff only missed two days of work and those were vacation days. At the hearing before the Deputy Commissioner, plaintiff testified that he needed money so he continued to work in spite of his pain. He further testified that he purchased a back brace and was taking medication to ease his pain. During this time, plaintiff never specifically requested to visit another doctor.
8. Between November 5, 2003 and the end of 2003, plaintiff worked 22.25 hours of overtime. From January 1, 2004 until he resigned on July 1, 2004, plaintiff worked 166.75 hours of overtime.
9. Plaintiff voluntarily resigned from his job at Real Reel on July 1, 2004. As set forth in the "Employee Separations Detail Report" introduced into evidence at the hearing before the Deputy Commissioner, plaintiff's reason for resigning was that he was moving to Raleigh and would return to school. Real Reel informed plaintiff that it would re-hire him if he ever wished to return to work there.
10. At the time of the hearing before the Deputy Commissioner, plaintiff was working as a machine operator at a grain factory. He worked five days a week for eight or more hours per day. His duties included controlling a machine, helping to make boxes, packing the grain in the boxes, bending 10 to 15 times a day, lifting up to 40 to 50 pounds, squatting 10 to 15 times a day, some walking, and constant standing. Plaintiff worked in this position until approximately June 2005.
11. Plaintiff filed a Form 33 with the Industrial Commission on or about September 21, 2004.
12. Through an interpreter, plaintiff testified before the Deputy Commissioner that the pain in his lower back has continued from the time of the accident until the present but had worsened beginning in the first half of 2004. Plaintiff described his pain as going from his right hip to the center of his back and from his left hip down his left leg. Plaintiff stated that the pain normally was an eight on a scale of one to ten and was a seven at the time of the hearing before the Deputy Commissioner. Plaintiff also testified that the pain made it difficult for him to sit, stand, or walk for long periods of time. Plaintiff further testified that he had experienced no other injuries after November 5, 2003, and that he wanted to be sent to a doctor for medical treatment to relieve his pain.
13. On August 8, 2005, plaintiff presented to Dr. James S. Fulghum, III of the Carolina Back Institute for evaluation. In his notes, Dr. Fulghum mentions that plaintiff has been under the recent care of Dr. Armstrong, a chiropractor. Dr. Fulghum had neither diagnostic studies nor treatment records for plaintiff but noted in his examination that straight-leg raising for plaintiff was negative to 90 degrees except for some complaint of leg pain. Dr. Fulghum did not observe any restriction of movement with this maneuver. Internal and external rotations of both hips were unremarkable. Dr. Fulghum concluded, "At this point 21 months out from the accident, it is difficult to get into etiology. If in fact, Dr. Armstrong did recommend an MRI study, it seems very appropriate to obtain at this time."
14. On April 3, 2006, Dr. Gregory A. Bortoff of Raleigh Radiology conducted an MRI on plaintiff that revealed degenerative disc disease at L4-5 and L5-S1 and a very mild bilateral neural foraminal stenosis L5-S1.
15. On April 21, 2006, plaintiff underwent a functional capacity evaluation. Based on the evaluation, plaintiff was capable of sustaining a light level of work for an eight-hour day. Light work is defined as exerting no more than 20 pounds of force occasionally and up to ten pounds of force frequently. The evaluation did reveal that plaintiff showed some inconsistent and self-limiting behavior. Ms. Rebecca Walls, the occupational therapist who administered the test, recommended physical therapy for plaintiff. She noted in her report that plaintiff indicated his pain ranged from 8 to 9.5 out of 10 during the entire testing period and that he reported "stabbing" and burning pain in his lower back and legs.
16. Having received both the MRI and functional capacity evaluation results, Dr. Leonard Nelson, Jr., a board-certified orthopedic surgeon, examined plaintiff on April 24, 2006. With regard to the test inconsistencies on the functional capacity evaluation, Dr. Nelson opined that there was a potential that plaintiff could do greater than light duty work; however, he was not concerned about the inconsistencies as he acknowledged that they do occur and these were not as serious as others that he had seen. Regarding the MRI findings, Dr. Nelson opined that he thought the findings were more dramatic than what the radiologist had reported regarding plaintiff's spinal stenosis. Dr. Nelson opined that plaintiff had degenerative disc disease at L4-L5 and L5-S1 with severe spinal stenosis at L5-S1.
17. Dr. Nelson opined that plaintiff's problems indicated on the MRI had a small chance of being caused by plaintiff's work injury on November 5, 2003. Dr. Nelson based his opinion on the fact that Dr. Mobley saw plaintiff shortly after the injury and plaintiff had few, if any, complaints of pain radiating into the lower extremities and then worked another eighteen months at the same job without any further medical treatment. Dr. Nelson opined that it did not make sense that one fall at one time would be the cause of his complaints two or three years later. Dr. Nelson further opined that if plaintiff had been in pain the entire time since his work injury on November 5, 2003, there is a chance that the fall aggravated a preexisting condition; however, when asked whether this chance would be greater than 50%, Dr. Nelson declined to answer.
18. Regarding a course of treatment for plaintiff, Dr. Nelson recommended prednisone to be followed by epidural shots. If this treatment did not relieve plaintiff's pain, Dr. Nelson would recommend discography, which is a needle test to the lower back to help determine the etiology of plaintiff's back pain. Dr. Nelson opined that plaintiff might need a spinal fusion.
19. The Full Commission finds there is insufficient competent evidence in the record to establish by the greater weight that a causal connection exists between plaintiff's current complaints of back pain and his November 5, 2003 injury by accident.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On November 5, 2003, plaintiff suffered a compensable injury by accident when he slipped and fell near his machine. N.C. Gen. Stat. § 97-2(6).
2. Where plaintiff did not seek any further medical treatment as a result of his compensable injury of November 5, 2003, until several years later, plaintiff cannot meet his burden of establishing a causal connection between his current complaints of lower back and leg pain and his compensable injury on November 5, 2003. The North Carolina Supreme Court has stated unequivocally that because of the difficulty of pinpointing the precise causative factors of back injuries, workers' compensation plaintiffs must employ expert medical testimony establishing the causal relationship between a specific trauma and a resulting injury. Click v. Freight Carriers, 300 N.C. 164,265 S.E. 2d 389 (1980). In the present case, Dr. Nelson opined that it did not make sense that one fall at one time would be the cause of plaintiff's complaints two or three years later. Therefore, based on nothing more than plaintiff's testimony of continued pain, there is insufficient evidence to establish the necessary causal relationship.
2. Because the greater weight of the evidence fails to establish a causal relationship between the compensable injury by accident and plaintiff's current complaints of back and leg pain, plaintiff is not entitled to payment by defendant for his medical treatment. Click v.Freight Carriers, 300 N.C. 164, 265 S.E. 2d 389 (1980); N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The plaintiff's claim is, and under the law must be, DENIED.
2. Each side shall pay its own costs.
This the ___ day of January 2007.
 S/___________________ PAMELA T. YOUNG, COMMISSIONER
CONCURRING:
 S/_____________________ THOMAS J. BOLCH, COMMISSIONER
 S/____________________ BUCK LATTIMORE, CHAIRMAN